IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LATONIA AMOS**                                                                **PLAINTIFF**

**V.**                                                         **CASE NO. 3:20-cv-00147-HTW-JCG**

**KILOLO KIJAKAZI,**[1]                                                    **DEFENDANT**
*Acting Commissioner of Social*
*Security Administration*

## REPORT AND RECOMMENDATION

Plaintiff Latonia Amos seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying her applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff has filed a Motion for Summary Judgment [9]. Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, has filed a Response [11] and Plaintiff a Rebuttal [12]. Having considered the submissions of the parties, the record, and relevant law, the undersigned concludes this case should be reversed and remanded because the Administrative Law Judge (ALJ) relied exclusively on Medical Vocational Rule 202.21 at step five of the sequential process without first considering whether vocational expert testimony was

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

necessary to determine the effect of Plaintiff's limitation to simple, routine, repetitive tasks on the occupational base.

## I. BACKGROUND

Plaintiff alleged a disability with an onset date of July 12, 2017, when she was 44 years of age, because of Chiari I malformation, post three surgeries, with related headaches and pain. After Plaintiff's claims for DIB and SSI were denied, she requested a hearing before an ALJ, and on January 15, 2019, the ALJ heard Plaintiff's case by video teleconferencing. [8] at 99-137. Plaintiff and a vocational expert testified. The ALJ issued a decision unfavorable to Plaintiff on March 27, 2019, [8] at 42-52, and on May 7, 2019, the ALJ issued a second decision unfavorable to Plaintiff, [8] at 23-33. After the Appeals Council denied Plaintiff's request for review, Plaintiff filed this action for review under 42 U.S.C. § 405(g).

In making the determination that Plaintiff was not entitled to benefits, the ALJ utilized the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. The ALJ determined, sequentially, whether Plaintiff (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) could perform the requirements of past work; and, if not, (5) based on Plaintiff's age, work experience, and residual functional capacity, could adjust to other work that existed in significant numbers in the national economy. *See See* 20 C.F.R. §§ 404.1520, 416.920.

The ALJ's two written decisions are identical until the fourth step of the sequential evaluation process. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 12, 2017. [8] at 25, 44. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "Chiari malformation Type 1 with neck pain and headaches, low back pain, and depression[.]" *Id.* at 25, 44. The ALJ concluded that Plaintiff's obesity was not a severe impairment. *Id.* at 26, 45. At step three, the ALJ determined that Plaintiff did not meet the standard of a listed impairment. *Id.* at 26-27, 45-46.

However, before reaching step four, the ALJ concluded Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

> with the following exceptions: She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but she should not climb ladders, ropes, and scaffolds. She is limited to simple, routine, repetitive tasks of unskilled work.

*Id.* at 27, 46.

The March 2019 and May 2019 decisions differ at step four. In the March 2019 decision, the ALJ found that Plaintiff could perform her past relevant work as a sales attendant and denied Plaintiff's claims. *Id.* at 51. According to Plaintiff's brief,

> Plaintiff's counsel, noting that the ALJ had made a finding in the hearing that the only job performed at SGA level was the job of home attendant and therefore that was the only past relevant work, brought this obvious inconsistency to the attention of the hearing office director. Without supplemental hearing or any further testimony of the VE, the second ALJ opinion of May 7, 2019 was issued.

[10] at 13.

In the second decision issued on May 7, 2019, the ALJ concluded that Plaintiff was unable to perform any past relevant work. [8] at 32. The ALJ then proceeded to step five and relied exclusively on Medical-Vocational Rule 202.21 to find Plaintiff not disabled. *Id.* at 32-33.

Plaintiff alleges two assignments of error. First, she argues that the ALJ erred by applying Medical Vocational Rule 202.21 because "a purely mental limitation like limitation to simple, routine, and repetitive tasks of unskilled work" does not fit within the category of nonexertional limitations having little or no effect on the occupational base. [10] at 14-15. Second, Plaintiff contends that her due process rights were violated because the ALJ found a residual functional capacity on the record at the hearing but then changed it in the written decisions "without having given Plaintiff an opportunity to further develop evidence, in particular [vocational expert] testimony, in light of the change." [12] at 4. With respect to the second assignment of error, the ALJ stated in the May 2019 decision that:

> I find that the Claimant has the residual functional capacity to sit up to six hours in an eight-hour day; that she can stand and walk up to four hours in an eight-hour day. She has the ability – can lift and carry on a frequent basis up to ten pounds. I'm going to give her a sit/stand opining at-will. She should never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, crouch, stoop, twist; she's going to be limited to occasional overhead reaching. She's limited to only occasional exposure to extreme cold, extreme heat, wetness. She should avoid all exposure to unprotected heights, hazardous machinery, and fumes, odors, dust, gases, poorly ventilated areas; also occasional exposure to noise, loud noise. Given those limitations, assume an individual similar to the Claimant in age, education, and work experience. Could such a hypothetical person perform the Claimant's past work that I have deemed relevevant either as actually performed or generally performed in the national economy?

[8] at 136.

The vocational expert responded that there were no jobs fitting the ALJ's hypothetical. *Id.* The ALJ asked the vocational expert to "tell [her] what would eliminate all jobs." *Id.* The vocational expert responded

> Okay. The – specifically, the sit/stand at-will opinion, in my experience, somebody needing that intense of an option for this person to be off task too much. In addition, with the limitations of a ten-pound lifting restriction, that would leave this person to be at the sedentary level and the work is generally performed in a seated position in a sedentary occupation.

*Id.* at 137.

In the May 2019 decision, the ALJ explained at step five why she reconsidered Plaintiff's residual functional capacity as follows:

> Of note, at the hearing, the undersigned gave an RFC with limitations similar to those set forth by the claimant's nurse practitioner in Exhibit 19F. These limitations included a sit/stand option, and the vocational expert testified that the RFC with the sit/stand option would result in no jobs. However, upon further review after the hearing, the undersigned determined the extent of these limitations was not justified by the overall evidence. In particular, upon further review of the nurse practitioner's treatment records, the undersigned finds that the limitations set forth in Exhibit 9F are not consistent with or supported by the evidence, including the nurse practitioner's own objective physical examination findings. . . . More particularly, the nurse practitioner noted the claimant may have exaggerated her symptoms. .
> . . .

*Id.* at 33.

## II. ANALYSIS

### A. Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the

Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). As the United States Supreme Court has recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

B. <u>The ALJ did not support her finding that Plaintiff's limitation to simple, routine, repetitive tasks has little or no effect on the occupational base</u>

Plaintiff argues that the ALJ first erred by applying Medical Vocational Rule 202.21 because "a purely mental limitation like limitation to simple, routine, and repetitive tasks of unskilled work" does not fit into the category of nonexertional limitations having little or no effect on the occupational base. [10] at 14-15.

There are tables in 20 C.F.R. § Pt. 404, Subpart P, App. 2, often referred to as "the Grids", which may be used by the ALJ at step five to establish that the claimant can perform other work. *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988). The Grids consist of rules, each of which addresses a particular combination of statutory factors. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. When findings of fact as to a claimant's age, education, transferability of skills, work experience, and residual functional capacity coincide with the criteria of a Grid rule, and that rule indicates the claimant is not disabled, the existence of jobs in the economy that the claimant can perform has been established by administrative notice. *Id.* at 479. The Grids relieve the Commissioner of the need to rely on vocational expert testimony in cases where the underlying findings of fact correspond precisely to the criteria of a specific Grid rule. *Id.*

The Grids may not be used where a claimant suffers from nonexertional impairments that "significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). However, SSR 83-14 provides that

> there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object. Environmental restrictions,

> such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base.
>
> Where nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a [vocational specialist].

SSR 83-14 (S.S.A. 1983).

Despite having a vocational expert at the hearing, the ALJ relied exclusively on Medical Vocational Rule 202.21 at step five in the May 2019 decision to find Plaintiff could perform other work. [8] at 32-33. The May 2019 decision does not discuss Plaintiff's limitation to simple, routine, repetitive tasks at step five, or even list Plaintiff's nonexertional impairments. *Id.* The ALJ simply concluded that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base[.]" *Id.* at 33. Plaintiff maintains that the ALJ did not reasonably apply SSR 83-14 because the examples of nonexertional limitations SSR 83-14 sets forth "give no indication, however slight," that a purely mental limitation, such as limitation to simple, routine, and repetitive tasks, is one which fits into the category of having little or no effect on the unskilled occupational base. [10] at 15.

Plaintiff's limitation to simple, routine, repetitive tasks falls between the examples in SSR 83-14. *See Owen v. Astrue*, No. CIV-12-297-F, 2013 WL 866897, at *3 (W.D. Okla. Feb. 13, 2013), report and recommendation adopted, No. CIV-12-0297F, 2013 WL 866946 (W.D. Okla. Mar. 7, 2013) (finding conclusive reliance on the Grids "particularly questionable" in evaluating mental limitations); *Staggs v. Astrue*, 781 F. Supp. 2d 790, 798 (S.D. Ind. 2011) (finding nonexertional limitations, including

8

depression, "fall somewhere between the examples discussed in SSR 83–14 and thus her case would seem to require the testimony of a vocational expert.").

SSR 83-14 directs that under these circumstances, "a decisionmaker will often require the assistance" of a vocational specialist "[w]here nonexertional limitations or restrictions within the light work category are between the examples above[.]" SSR 83-14. The ALJ's May 2019 decision does not indicate that the ALJ considered whether vocational expert testimony was needed to determine the effect Plaintiff's limitation to simple, routine, repetitive tasks on the occupational base.

While an ALJ may determine that a nonexertional impairment has very little or no effect on the range of jobs available, he or she "must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir.1987); *see Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (finding error where the ALJ "did not affirmatively determine whether or not [claimant's] reaching limitation was negligible" and did "not determine[e] whether the reaching limitation precluded reliance on the Grids."); *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) (concluding "[t]he ALJ failed to consider the intermediate question—whether the range of work Bapp could perform was so significantly diminished as to require the introduction of vocational testimony."); *Lyde v. Colvin*, No. 3:13-CV-00603 (JAM), 2016 WL 53822, at *6 (D. Conn. Jan. 5, 2016) (finding "[a]n ALJ must make a specific finding on the significance of the non-exertional impairment, and adequately explain that finding on the record, to determine whether he or she must consider testimony from a vocational expert."); *Cruz v. Colvin*, No. 12–

CV–7346 (PAC/AJP), 2013 WL 3333040, at *19 (S.D.N.Y. July 2, 2013) ("If [the ALJ] treated the Grid as dispositive because he found that [the plaintiff's] non-exertional limitations did not significantly reduce, or only had a negligible impact on, [the plaintiff's] work capacity, [the ALJ] was obligated to explain that finding."); *Henriquez v. Chater*, No. 94–CV–7699 (SS), 1996 WL 103828, at *4 (S.D.N.Y. March 11, 1996) (finding remand required, in part, because the record "does not . . . indicate whether the ALJ considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step.").

Because the ALJ relied exclusively on Medical Vocational Rule 202.21 at step five without first addressing whether vocational expert testimony was necessary to determine the effect of Plaintiff's limitation to simple, routine, repetitive tasks on the occupational base, the undersigned concludes that the ALJ's May 2019 decision should be reversed and remanded to the Commissioner for further proceedings.

C. Plaintiff's due process argument is unsupported

Plaintiff's second assignment of error is that her due process rights were violated because the ALJ found a residual functional capacity on the record at the hearing but then changed it in the written decisions "without having given Plaintiff an opportunity to further develop evidence, in particular [vocational expert] testimony, in light of the change." [12] at 4. Defendant counters that the ALJ was not bound by the hypothetical she posed to the vocational expert at the hearing because the Commissioner's decision was not final until the ALJ issued her decision. [11] at 7.

Plaintiff cites no authority in this portion of her briefing and does not address Defendant's argument that the ALJ's decision was not final until the ALJ issued her decision. Plaintiff is not entitled to relief on this assignment of error because merely asserting that the law requires or allows a certain action does not suffice. A party must explain why and provide citations to relevant authority to support her position. *Verso Paper, LLC v. HireRight, Inc.,* No. 3:11-MC-628-CWR-LRA, 2012 WL 2376046, at *5 (S.D. Miss. June 22, 2012) (citing *de la O v. Housing. Auth. of City of El Paso, Tex.,* 417 F.3d 495, 501 (5th Cir. 2005)). Plaintiff has not done so here.

### III. RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment [9] be granted in part and denied in part. Plaintiff's Motion for Summary Judgment should be granted on her first assignment of error and denied on the second assignment of error. The ALJ's May 7, 2019, decision should be reversed and remanded because the ALJ relied exclusively on Medical Vocational Rule 202.21 at step five without first considering whether vocational expert testimony was necessary to determine the effect of Plaintiff's limitation to simple, routine, repetitive tasks on the occupational base.

### IV. NOTICE OF RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven

> days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 18th day of August, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE